# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

|  |  |
|---|---|
| In re: | Case No. 24-43778-mlo |
| INTERACTIVE HEALTH BENEFITS LLC, d/b/a ACA Track, LLC, | Judge Maria L. Oxholm |
| Debtor. | Chapter 11 *Subchapter V* |

## FIRST DAY MOTION OF DEBTOR FOR AN ORDER AUTHORIZING: (A) PAYMENTOF PREPETITION EMPLOYEE WAGES, SALARIES, AND OTHER COMPENSATION; (B) REIMBURSEMENT OF PREPETITION EMPLOYEE BUSINESS EXPENSES; (C) PAYMENTS FOR WHICH PREPETITION PAYROLL AND TAX DEDUCTIONS WERE MADE; (D) PAYMENT TO THIRD PARTIES OF ALL COSTS AND EXPENSES INCIDENT TO THE FOREGOING PAYMENTS AND CONTRIBUTIONS; AND (E) APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR AND PAY ALL CHECKS AND TRANSFERS DRAWN ON THE DEBTOR'S PAYROLL ACCOUNTS TO MAKE THE FOREGOING PAYMENTS

The above-captioned debtor and debtor in possession (the "Debtor") hereby moves this Court (the "Motion") for entry of an order[1] pursuant to sections 105(a), 363(b), 507(a)(4), and 507(a)(5) of title 11 of the United States Code (the "Bankruptcy Code"), (i) authorizing, but not directing, the Debtor, in accordance with its stated policies, to: (a) pay all prepetition wages, salaries, and other compensation owed to the Debtor's employees, subject to specified caps;

---

[1] A copy of the proposed form of order is attached hereto as Exhibit A.

(b) reimburse all prepetition business expenses to employees, subject to a specified cap; (c) make all payments for which prepetition payroll and tax deductions were made, subject to specified caps; (d) make all payments to third parties relating to the foregoing payments and contributions; and (ii) authorizing applicable banks and other financial institutions to honor and pay all checks and transfers drawn on the Debtor's accounts to make the foregoing payments. In further support of this Motion, the Debtor respectfully states as follows:

## BACKGROUND

1. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code. On the Petition Date, the Debtor also filed other motions or applications seeking certain typical "first day" relief.

2. The factual background regarding the Debtor, including its business operations and the events leading to the filing of the subchapter V case, is set forth in detail in the *Declaration of Todd Covert in Support of Chapter 11 Petition and First Day Motions* (the "Covert Declaration"), filed contemporaneously with this Motion and fully incorporated herein by reference.[2]

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Covert Declaration.

3.     The Debtor is continuing in possession of its property and is continuing to operate and maintain its business as debtor in possession pursuant to section 1184 of the Bankruptcy Code.

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

5.     The Debtor employs twenty employees, ten of which are full time, salaried employees, and ten of which are part-time, hourly employees, and three independent contractors (the "Employees"). The Employees' skills, knowledge, and understanding of the Debtor's business are the Debtor's most valuable asset. Without the continued services of the Employees, an effective reorganization of the Debtor will not be possible.

6.     To preserve its most valuable assets, to minimize the personal hardship that the Employees will suffer if prepetition employee-related obligations are not paid when due or as expected, and to maintain morale and an essential workforce during this critical time, the Debtor, by this Motion, seeks authority, in accordance with its stated policies, to: (a) pay all prepetition wages, salaries, and other compensation owed to the Debtor's Employees, subject to specified caps; (b) reimburse all prepetition business expenses to Employees, subject to specified

caps; (c) make all payments for which prepetition payroll and tax deductions were made, subject to specified caps; (d) pay all third-party costs relating to the foregoing payments and contributions; and (e) authorize and direct applicable banks and other financial institutions to honor and pay all checks and transfers drawn on the Debtor's payroll accounts to make the foregoing payments (collectively, and as more fully described below, the "Employee Wages and Benefits"). The Debtor believes it has accurately estimated the amount of outstanding prepetition wages and benefits identified herein. However, to ensure the Employee Wages and Benefits are paid in full, and to prevent additional hardship to the Debtor's employees, the Debtor seeks authority to pay no more than 25% in excess of each of the estimated amounts of the following outstanding prepetition obligations that are defined or described below in this Motion (hereinafter, the "Cap").

## COMPENSATION, EXPENSE REIMBURSEMENT, AND BENEFITS

### A. Wages, Salaries, and other Compensation

7. As of the Petition Date, the Debtor's average gross monthly compensation for its Employees, including all wages and commissions, is approximately $137,900 ("Wages"). Substantially all payroll payments are made via direct deposit through a payroll service directly to the Employees. All Employees are paid every other week on Friday (each a "Pay Day"). The Debtor's

4

next scheduled Pay Day is April 26, 2024, which will cover the period through April 8, 2024 through April 21, 2024.

8.  Because the Debtor's Employees are paid in arrears, as of the Petition Date, the Debtor's Employees have not been paid all of their respective prepetition wages.

9.  As of the Petition Date, the Debtor believes that the aggregate amount of accrued wages (excluding the Payroll Taxes and Deductions) earned prior to the Petition Date that remains unpaid to the Debtor's Employees is approximately $40,000 (the "Unpaid Wages").  By this Motion, the Debtor requests the authority to pay all such Unpaid Wages to its Employees in the ordinary course of business, subject to the Cap.  The Debtor has made careful inquiries and has taken diligent steps to ensure that its Employees are not owed more than $15,150 for Unpaid Wages as of the Petition Date.  Accordingly, if this Motion is granted, the Debtor is confident that no Employee will be paid more than $15,150 for such Unpaid Wages.

**B.  Reimbursable Expenses**

10.  Employees may occasionally incur expenses on behalf of the Debtor in the scope of their employment (the "Reimbursable Expenses").  The Reimbursable Expenses include, but are not limited to, mileage driven for business travel, fuel, and office supplies.

5

11.     Reimbursable Expenses are incurred on behalf of the Debtor by Employees through use of personal funds or credit cards.  In the normal course of business, such Employees are reimbursed in the payroll cycle following a reimbursement request.

12.     In the aggregate, Employees incur an average of approximately $0 - $1,000 in Reimbursable Expenses every month.  The Debtor estimates that as of the Petition Date, there are no Reimbursable Expenses have been incurred but remain unpaid.

13.     However, to the extent there are incurred but unpaid Reimbursable Expenses prior to the Petition Date that have not yet been accounted for, those Reimbursable Expenses were incurred on the Debtor's behalf and with the understanding that they would be reimbursed.  To preserve the relationships it enjoys with the Employees at this critical time, and to avoid harming the individual Employees who incurred the Reimbursable Expenses on their behalf, the Debtor requests authority to pay all unpaid Reimbursable Expenses that accrued prepetition or relate to the prepetition period, up to $250, subject to the Cap.

## C.     Paid Time Off

14.     The Debtor pays the Employees for two to three weeks of Paid Time Off ("PTO") per year, which is accrued throughout the year on each pay period, depending on the individual Employee's tenure with the Debtor. Employees are

eligible for PTO after they have been employed for 180 days with the Debtor. Offering PTO is usual, customary, and necessary if the Debtor is to retain qualified employees to operate its businesses.

15. The Debtor seeks authority to honor, in the ordinary course of business, all liabilities to its Employees that arose under their PTO policies or practices prior to the Petition Date. The Debtor anticipates that most Employees will utilize their accrued PTO in the ordinary course of business and that there is not likely to be any material cash flow requirements beyond the Debtor's normal payroll obligations.

### D. Tax Withholdings, Payroll Taxes, and Deductions

16. The Debtor is required by law to withhold from an Employee's wages amounts related to, among other things, federal, state and local income taxes, and social security and Medicare taxes (collectively, the "Tax Withholdings") for remittance to the appropriate federal, state or local taxing authorities. The Debtor must then match, from its own funds, for social security and Medicare taxes and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (together with the Tax Withholdings, the "Payroll Taxes").

17. The Debtor's current monthly Payroll Taxes total approximately $8,688, which is included in the Wages figure above. The Debtor's Payroll Taxes

are generally processed and forwarded to the appropriate federal, state, or local taxing authorities at the same time Employee payroll checks are administered. As of the Petition Date, the Debtor estimates that the amount of accrued and outstanding prepetition obligations with respect to the Payroll Taxes are approximately $4,350. The Debtor seeks authority to honor and process the prepetition obligations with respect to the Payroll Taxes, including forwarding the Tax Withholdings, subject to the Cap.

**E.    Insurance and Disability Programs**

**i.    Life and AD&D Insurance Programs**

18.    The Debtor provides Eligible Employees life and accidental death and dismemberment insurance coverage (the "Life and AD&D Insurance") through Mutual of Omaha. The total cost of the Life and AD&D Insurance to the Debtor is approximately $282.66 per month. For the avoidance of doubt, all administration costs on account of the Life and AD&D Insurance Programs are included in the monthly premium costs. As of the Petition Date, the Debtor estimates that the amount of accrued but unpaid obligations on account of the Life and AD&D Insurance is $141.33.

**ii.    Disability Benefits**

19.    The Debtor provides Eligible Employees with short- and long-term disability benefits (the "Disability Benefits" and, together with the Life and AD&D

Insurance, the "Life Insurance and Disability Programs") administered by Mutual of Omaha. Under the short-term disability benefits program, Eligible Employees are entitled to, among other things, salary continuation of up to sixty percent (60%) of their pre-disability, up to a maximum of $1,000 per week, for up to 11 weeks. Payments on account of the Disability Benefits are made out of the Debtor's ordinary payroll processing. The length of short-term disability benefits provided is based on insurance carrier approval and the applicable Employee's tenure with the Debtor.

20. Under the long-term disability benefits program, Eligible Employees are entitled to, among other things, salary continuation of up to sixty percent (60%) of their pre-disability earnings, up to a maximum of $6,000 per month based their pre-disability earnings, in the event of a long-term medical disability due to illness or injury.

21. As of the Petition Date, the Debtor estimates that the amount of accrued but unpaid obligations on account of the Disability Benefits is $259. The Debtor seeks authority, but not direction, to pay all prepetition amounts due under the Disability Benefits and to continue the Disability Benefits on a postpetition basis in the ordinary course of business.

33407651.5

### F. Workers' Compensation Program

22. The Debtor maintains workers' compensation insurance for their Employees at the statutorily required level for each U.S. state in which the Debtor has Employees (collectively, the "Workers' Compensation Program"). The Debtor maintains coverage for the Workers' Compensation Program through Accident Fund. Additionally, the Debtor utilizes Legacy Partners to administer the Worker's Compensation Program and ensure that the Debtor is in compliance with all applicable state laws. The Debtor pays approximately $1,323 in premiums, expenses, and fees quarterly to maintain the Workers' Compensation Program. By this Motion, the Debtor seeks authority, but not direction, to pay accrued but unpaid prepetition amounts related to the Workers' Compensation Program, continue and maintain the Workers' Compensation Program in the ordinary course of business, and modify the automatic stay to allow Employees to assert claims under the Workers' Compensation Program to the extent applicable. As of the Petition Date, the Debtor believes that there is approximately $689 in accrued and unpaid premiums and fees on account of the Workers' Compensation Program.

### G. 401(k) Plan

23. The Debtor provides all Eligible Employees who have been employed for at least three months, the ability to participate in a 401(k) defined contribution program (the "401(k) Plan" and, together with the Insurance and Disability

Programs and the Workers' Compensation Program, the "Employee Welfare Programs"). Historically, the Debtor has matched one-hundred percent (100%) of the first one percent (1%) of Employees' contributions and fifty percent (50%) on the next five percent (5%) of the Employees' contributions to their 401(k) accounts, up to three and one-half percent (3.5%) of the Employees' salary. The 401(k) Plan currently is administered by Great Lakes Pension and all administrative costs associated with the 401(k) Plan are deducted from the assets contributed by the Employee. The 401(k) Plan allows Employees to make both pre-tax and Roth contributions in amounts up to the maximum amount allowed by the IRS. Each Employee's contributions under the 401(k) Plan are automatically deducted from each paycheck and transferred to a trust established under the 401(k) Plan (collectively, the "401(k) Deductions"). The Debtor's matched contributions are funded bi-weekly, on Pay Days. As of the Petition Date, the Debtor estimates that it has incurred $3,000 in accrued but unpaid 401(k) Plan remittance obligations.

24. Many Employees' retirement savings solely consist of the 401(k) Plan. As such, the Debtor believes that continuing the 401(k) Plan is essential to maintaining Employee morale and protecting Employee expectations. The Debtor seeks authority, but not direction, to pay any 401(k) Deductions and any match

33407651.5

contributions in the ordinary course of business and consistent with past practice on a postpetition basis.

## REQUEST FOR AUTHORITY TO MAKE ALL PAYMENTS TO THIRD PARTIES INCIDENT TO THE PAYMENTS AND CONTRIBUTIONS

25.     The Debtor requests authority to pay all costs incident to, among other items, the Unpaid Wages, Reimbursable Expenses, PTO, the Payroll Taxes, and the Employee Welfare Programs, including other processing costs or administration costs ("Prepetition Processing Costs"). The Debtor estimates that the aggregate amount of Prepetition Processing Costs accrued but unpaid as of the Petition Date constitutes a *de minimis* amount. Payment of the Prepetition Processing Costs is justified because the failure to pay any such amounts might disrupt services of third party providers with respect to these Employee Wages and Benefits.

## REQUEST FOR AUTHORITY FOR BANKS TO HONOR AND/OR REISSUE CHECKS

26.     In addition, the Debtor requests that all applicable banks and other financial institutions be authorized to receive process, honor and pay any and all checks and transfers drawn on the Debtor's accounts and associated with the relief requested herein, whether such checks were presented before, or are presented after, the Petition Date.

33407651.5

27.     The Debtor further seeks comfort that the banks and other financial institutions may rely on the representations of the Debtor as to which checks and transfers are honored, processed and reissued in accordance with this Motion without any duty of further inquiry and without liability for following the Debtor's instructions.

## BASIS FOR RELIEF

28.     The Debtor seeks the relief requested herein because any delay in paying any of the Employee Wages and Benefits could severely disrupt the Debtor's relationship with its Employees and irreparably impair the Employees' morale at the very time that their dedication, confidence, and cooperation are most critical.  The Debtor faces the risk that its operations may be severely impaired if the Debtor is not immediately granted authority to pay the Employee Wages and Benefits.  At this critical stage, the Debtor simply cannot risk the substantial disruption of its business operations that would result from any decline in workforce morale attributable to the Debtor's failure to pay the Employee Wages and Benefits in the ordinary course of its businesses.

29.     If the relief requested herein is not granted, the Employees would suffer hardship and, in many instances, financial difficulties, since these funds are needed to enable them to meet their personal obligations.  In addition, without the

requested relief, the Debtor's stability would be undermined by the potential threat that otherwise loyal Employees at all levels would seek other employment.

30.    Pursuant to section 507(a)(4) of the Bankruptcy Code, each Employee may be granted a priority claim for:

> allowed unsecured claims, but only to the extent of $15,150 for each individual or corporation, as the case may be, earned within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for –
>
> (A)    wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or
>
> (B)    sales commissions earned by an individual or by a corporation with only 1 employee, acting as an independent contractor in the sale of goods or services, for the debtor in the ordinary course of the debtor's business if, and only if, during the 12 months preceding that date, at least 75 percent of the amount that the individual or corporation earned by acting as an independent contractor in the sale of goods or services was earned from the debtor.

11 U.S.C. § 507(a)(4).

31.    Likewise, under section 507(a)(5) of the Bankruptcy Code, Employees ultimately may be granted a priority claim for:

> allowed unsecured claims for contributions to an employee benefit plan -
>
> (A)    arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
>
> (B)    for each such plan, to the extent of-
>
>   (i)    the number of employees covered by each such plan multiplied by $15,150; less

> (ii) the aggregate amount paid to such employees under paragraph (4) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(5).

32.　The Debtor believes that the Employee-related obligations that it seeks to pay with respect to the Employee Wages and Benefits are entitled to priority status under sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code and do not exceed $15,150 per Employee. The Debtor would therefore be required to honor these claims in full in order to confirm a plan of reorganization. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for wages, salaries, and commissions, and certain allowed unsecured claims for contributions to an employee benefit plan). Thus, granting the relief requested herein would only affect the timing, and not the amount, of the payment of such amounts to the extent that they constitute priority claims.

33.　Furthermore, the vast majority of the Debtor's Employees rely exclusively on their full compensation or reimbursement of their expenses in order to continue to pay their daily living expenses, and these Employees will be exposed to significant financial difficulties if the Debtor is not permitted to pay the unpaid Employee Wages and Benefits. Moreover, the Debtor believes that if the Debtor is unable to honor such obligations, Employee morale and loyalty will be jeopardized at a time when such support is critical. Courts have approved the

payment of prepetition claims of employees for wages, salaries, expenses, and benefits on the grounds that the payment of such claims was necessary to effectuate a successful reorganization.

34.     The requested relief represents a sound exercise of the Debtor's business judgment, is necessary to avoid immediate and irreparable harm to the Debtor's estate, and is therefore justified under applicable law. Paying prepetition wages, employee benefits, and similar items, and the continuation of the Employee Wages and Benefits, will benefit the Debtor's estate by allowing the Debtor to preserve value during the restructuring. Indeed, the Debtor believes that without the relief requested herein being granted, current Employees may seek alternative opportunities, which could jeopardize the success of this case.

35.     Indeed, the Payroll Taxes and any deductions principally represent Employee earnings that governments (in the case of taxes), Employees (in the case of voluntarily withheld amounts), and judicial authorities (in the case of involuntarily withheld amounts) have designated for deduction from Employees' paychecks. With respect to Payroll Taxes in particular, the payment of such taxes will not prejudice other creditors of the Debtor's estate, as the relevant taxing authorities would generally hold priority claims under section 507(a)(8) of the Bankruptcy Code with respect to such obligations. These Payroll Taxes are held in trust by the Debtor and, as such, the Payroll Taxes are not property of the Debtor's

estate under section 541 of the Bankruptcy Code. *See*, *e.g.*, *Begier v. IRS*, 496 U.S. 53, 67 (1990) (withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estate). Furthermore, failure to pay these benefits could result in hardship to certain Employees and an administrative burden for the Debtor. Indeed, the Debtor expects inquiries from garnishors regarding the Debtor's failure to submit, among other things, child support and alimony payments that are not the Debtor's property, but, rather, have been withheld from Employees' paychecks on behalf of such parties. Moreover, if the Debtor cannot remit these amounts, the Employees may face legal action due to the Debtor's failure to submit such payments.

36. The "fundamental purpose of reorganization is to prevent the debtor from going into liquidation, with an attendant loss of jobs." *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984). Payment of the amounts requested in this Motion is in the interest of all parties because such payment will facilitate the continued operation of the Debtor's businesses and will help avoid liquidation of the estate. *See In re Tropical Sportswear Int'l Corp.*, 320 B.R. 15, 20 (Bankr. M.D. Fla. 2005); *Lehigh and New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (necessity-of-payment doctrine "teaches no more than, if payment of a claim which arose prior to reorganization is essential to the continued operation of the [business] during the reorganization, payment may be authorized even if it is made

out of corpus"). Accordingly, the relief sought by this Motion will allow the Debtor to continue to operate with minimal disruption and enable the Debtor to stabilize its businesses.

37. In addition, applicable banks and other financial institutions should be authorized and directed to receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtor related to the Employee Wages and Benefits, whether such checks were presented or fund transfer requests were submitted before or after the Petition Date. Because these checks are drawn on identifiable bank accounts, checks other than those for the Employee Wages and Benefits will not be honored inadvertently. Moreover, the Debtor has sufficient cash reserves to promptly pay all of the Employee Wages and Benefits, to the extent described herein, on an ongoing basis and in the ordinary course of its businesses. Accordingly, for the foregoing reasons, the Debtor believes that granting the relief requested herein is appropriate and in the best interests of its estate and creditors.

38. Bankruptcy Rule 6003 provides that "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, grant . . . (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate including a motion to pay all or part of a claim that arose before the filing of the petition . . . ." Fed. R.

Bankr. P. 6003. As described above, if the Debtor are not authorized to pay the amounts identified herein, its estate will suffer immediate and irreparable harm. Accordingly, the relief requested herein is consistent with Bankruptcy Rule 6003.

## WAIVER OF STAY

39. The Debtor further seeks a waiver of any stay of the effectiveness of the order approving this Motion. Pursuant to Bankruptcy Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 10 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As set forth above, immediate relief is essential to prevent potentially irreparable damage to the Debtor's operations, value and ability to reorganize. Accordingly, the Debtor submits that ample cause exists to justify a waiver of the ten-day stay imposed by Bankruptcy Rule 6004(h), to the extent that it applies.

## RESERVATION OF RIGHTS

40. Nothing contained herein is intended or shall be construed as (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion;

(e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or encumbrance on property of the Debtor's estate; or (g) a waiver of any claims or causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law. Likewise, if the Court grants the relief sought herein, any payment made pursuant to the order is not intended and should not be construed as an admission as the validity of any particular claim or a waiver of the Debtor's rights to subsequently dispute such claim.

## NOTICE

41.     Notice of this Motion has been served on the following parties or, in lieu thereof, to their counsel, if known: (i) the Office of the United States Trustee; (ii) the Internal Revenue Service; (iii) those creditors listed on the Debtor's List of Creditors Holding 20 Largest Unsecured Claims; (iv) any banks where the Debtor maintains its bank accounts; and (v) those parties who have requested service of notice in these case. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

## NO PRIOR REQUEST

42.     No previous request for the relief sought herein has been made to this Court or to any other court.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court deems just and proper.

Dated:      April 16, 2024          Respectfully submitted,

                           */s/ Stephen M. Gross*

**MCDONALD HOPKINS PLC**
Stephen M. Gross (P35410)
Ashley J. Jericho (P72430)
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075
Email: sgross@mcdonaldhopkins.com

ajericho@mcdonaldhopkins.com

*Proposed Counsel to the Debtor and Debtor in Possession*

33407651.5

## EXHIBIT A

**Proposed Order**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION - DETROIT

|  |  |
|---|---|
| In re: | ) Case No. 24-43778-mlo |
|  | ) |
| INTERACTIVE HEALTH BENEFITS LLC, | ) Judge Maria L. Oxholm |
| d/b/a ACA Track, LLC, | ) |
|  | ) Chapter 11 |
| Debtor. | ) *Subchapter V* |
|  | ) |

**ORDER AUTHORIZING: (A) PAYMENT OF PREPETITION EMPLOYEE WAGES, SALARIES, AND OTHER COMPENSATION; (B) REIMBURSEMENT OF PREPETITION EMPLOYEE BUSINESS EXPENSES; (C) PAYMENTS FOR WHICH PREPETITION PAYROLL AND TAX DEDUCTIONS WERE MADE; (D) PAYMENT TO THIRD PARTIES OF ALL COSTS AND EXPENSES INCIDENT TO THE FOREGOING PAYMENTS AND CONTRIBUTIONS; AND (E) APPLICABLE BANKS AND OTHER FINANCIAL INSTITUTIONS TO HONOR AND PAY ALL CHECKS AND TRANSFERS DRAWN ON THE DEBTOR'S PAYROLL ACCOUNTS TO MAKE THE <u>FOREGOING PAYMENTS</u>**

This matter coming before the Court on the *First Day Motion of Debtor For an Order Authorizing: (A) Payment Of Prepetition Employee Wages, Salaries, and Other Compensation; (B) Reimbursement of Prepetition Employee Business Expenses; (C) Payments For Which Prepetition Payroll and Tax Deductions Were Made; (D) Payment To Third Parties of All Costs and Expenses Incident To The Foregoing Payments And Contributions; and (E) Applicable Banks and Other Financial Institutions to Honor and Pay All Checks and Transfers Drawn on the*

*Debtor's Payroll Accounts to Make the Foregoing Payments* (the "Motion"),[1] filed by the debtor and debtor in possession in the above-captioned case (the "Debtor"); the Court having reviewed the Motion and all pleadings related thereto, and having considered the statements of counsel and the evidence adduced with respect to the Motion at a hearing before the Court (the "Hearing"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and (c) notice of the Motion and the Hearing was sufficient under the circumstances; it appearing that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors and other parties in interest; the Court finding that, absent the relief granted herein, the Debtor would suffer "immediate and irreparable harm," as such term is used in Bankruptcy Rule 6003; and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein,

**IT IS HEREBY ORDERED THAT**:

1.      The Motion is GRANTED.

2.      The Debtor is authorized, but not directed, pursuant to sections 105(a), 363, and 1184 of the Bankruptcy Code, to continue to honor and pay in the ordinary course all prepetition amounts relating to: (i) Unpaid Wages, estimated to

---

[1]      Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

be approximately $40,000; (ii) Reimbursable Expenses, estimated to be an amount no more than $250; (iii) Payroll Taxes, estimated to be approximately $4,350; and (iv) Employee Welfare Programs, estimated to be $5,000.

3.      The Debtor shall pay no more than 25% in excess of each of the estimated amounts identified in the immediately preceding paragraph.

4.      The Debtor is authorized, but not directed, pursuant to sections 105(a), 363, and 1184 of the Bankruptcy Code, to honor, in the ordinary course of business, all liabilities to the Employees that arose under their PTO policies or practices prior to the Petition Date.

5.      The Debtor is authorized, but not directed, pursuant to sections 105(a), 363, and 1184 of the Bankruptcy Code, to continue to pay postpetition Wages in the ordinary course and in accordance with its prepetition practices and policies.

6.      The Debtor is authorized, but not directed, pursuant to sections 105(a), 363, and 1184 of the Bankruptcy Code, to continue to pay all postpetition Reimbursable Expenses in the ordinary course and in accordance with its prepetition practices and policies.

7.      The Debtor is authorized, but not directed, pursuant to sections 105(a), 363, and 1184 of the Bankruptcy Code, to continue to allocate and

distribute all postpetition Payroll Taxes and any deductions in the ordinary course and in accordance with the Debtor's policies and prepetition practices.

8.     The Debtor is authorized, but not directed, pursuant to sections 105(a), 363, and 1184 of the Bankruptcy Code, to continue to make all payments to third parties incident to payment of the Employee Wages and Benefits.

9.     The Debtor is authorized, but not directed, to continue the Employee Welfare Programs.

10.     Notwithstanding the relief granted in this Order and any actions taken pursuant to such relief, nothing in this Order or any payment made pursuant to this Order shall constitute, nor is it intended to constitute: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtor under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtor's or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Order or the Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission to the validity, priority, enforceability, or perfection of any lien on, security interest in, or encumbrance on property of the Debtor's estate; or (g) a waiver of any claims or

4

causes of action which may exist against any entity under the Bankruptcy Code or any other applicable law.

11.     Subject to available funds, (i) the Debtor's banks are authorized to honor prepetition checks and transfers in accordance with this Order on or after the Petition Date, and (ii) the Debtor's banks and financial institutions are authorized to process and honor all other checks and transfers issued for payments approved by this Order and/or reissue checks for any payments approved by this Order where checks may be dishonored postpetition.

12.     Any bank that honors a check or transfer in accordance with the immediately preceding paragraph may do so without any duty of further inquiry and without liability for following the Debtor's instructions.

13.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

14.     Pursuant to Bankruptcy Rule 6004(h), this Order is final and shall be immediately effective and enforceable upon its entry.